UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REYNALDO ALBINO-MARTINEZ,
et al.,

        Petitioners,

v.

REBECCA ADDUCCI, et al.,

        Respondents.
_____/

Case No. 2:20-cv-10893

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER
DENYING PETITIONERS' MOTION FOR A
TEMPORARY RESTRAINING ORDER [2] AND GRANTING
PETITIONERS' MOTION FOR LEAVE TO FILE EXCESS PAGES [12]**

On April 7, 2020, Petitioners filed a petition for writ of habeas corpus ("Petition") and argued that they are being held in violation of their Fifth Amendment rights and that Petitioner Chinchilla-Flores is being held in violation of 8 U.S.C. § 1231(a)(6). ECF 1. Petitioners then filed the present emergency motion for a temporary restraining order ("TRO") related to their Fifth Amendment claim and argued that the Court should order their immediate release. ECF 2. The Court reviewed the briefs and finds that a hearing is unnecessary.[1] *See* E.D. Mich. LR 7.1(f)(2). For the following reasons, the Court will deny Petitioners' emergency motion for a temporary restraining order.

---

[1] Counsel are advised that sending emails to the case manager of the Court and attempting to argue why certain facts in the case merit immediate convocation of a telephonic hearing are, indeed, ex parte communications on the merits of the case and therefore inappropriate.

1

## BACKGROUND

Petitioners are five immigrant detainees—non-United States citizens detained by the federal government for violating United States immigration laws—currently held at the Monroe County Jail ("Monroe") and the St. Clair County Jail ("St. Clair"). ECF 1, PgID 6. Respondents include the U.S. Immigration and Customs Enforcement ("ICE"), Attorney General William Barr, Acting Secretary of the U.S. Department of Homeland Security Chad Wolf, and two ICE officials—Rebecca Adducci and Matthew T. Albence. *Id.* at 11–12. Petitioners alleged that they are particularly vulnerable to the current COVID-19 pandemic because they have certain pre-existing health conditions. *See id.* at 23–27. Respondents denied that Petitioners are high risk individuals. ECF 10, PgID 252–58. Because of the COVID-19 pandemic, Petitioners alleged that their detention violates their Fifth Amendment due process rights. Petitioners therefore requested that the Court issue a TRO and require Respondents to release them immediately. *See* ECF 2.

## LEGAL STANDARD

"Temporary restraining orders . . . are extraordinary remedies which should be granted only if the movant carries his burden of proving that the circumstances clearly demand it." *Barron v. PGA Tour, Inc.*, 670 F. Supp.2d 674, 682 (W.D. Tenn. 2009) (citation and quotation omitted). The purpose of a TRO "is to preserve the status quo so that a reasoned resolution of a dispute may be had." *Proctor & Gamble Co. v. Bankers Trust Co.* 78 F.3d 219, 226 (6th Cir. 1996). A TRO that requests an affirmative act, like the one Petitioners request here, is "tantamount to a mandatory injunction [and] requires a higher—yet undefined—burden to issue than required of

2

an order merely preserving the status quo." *Shelby Cty. Advocates for Valid Elections v. Hargett*, 348 F. Supp. 3d 764, 769 (W.D. Tenn. 2018) (citing *Hill v. Snyder*, No. 16-2003, 2016 WL 4046827, at *1–*2 (6th Cir. July 20, 2016); *Ne. Ohio Coal. for Homeless and Serv. Emp. Int'l. Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1006 (6th Cir. 2006)).

When determining whether to issue a TRO, the Court looks at: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the" motion. *Blackwell*, 467 F.3d at 1009. The factors are "interrelated considerations that must be balanced together." *Id*. (citation omitted).

## DISCUSSION

I. <u>Jurisdiction</u>

The habeas statute, 28 U.S.C. § 2241, affirmatively grants the Court the power "to issue writs of habeas corpus to prisoners being held in violation of the Constitution or laws or treaties of the United States." *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (internal quotations and citations omitted). Because Petitioners alleged constitutional and federal statutory violations, § 2241 is the proper avenue for their claims, and the Court has jurisdiction over the Petition.

II. <u>Briefing on the Motion</u>

As an initial matter, the Court will address the various briefings submitted on the present motion for a TRO. On April 10, 2020, Respondents promptly responded to the motion for a TRO. ECF 10. Petitioners then filed a 21-page reply and an

3

unopposed motion for leave to file excess pages. ECF 11, 12. The Court will grant Petitioner's motion and will consider their entire reply brief.

Immediately after Petitioners filed their reply, Respondents filed a sur-reply. ECF 13. "Parties do not have a right to file a surreply brief under the federal procedural rules or the local rules." *Nett v. Wells Fargo Home Mortg. Inc.*, No. 10-15058, 2011 WL 1519166, at *3 (E.D. Mich. Apr. 20, 2011) (citing *Jones v. Northcoast Behavioral Healthcare Sys.*, 84 F. App'x 597, 599 (6th Cir. 2003); *LaSalle Nat'l Bank Ass'n v. Wonderland Shopping Ctr. Venture Ltd. P'ship*, 223 F. Supp. 2d 806, 808 n.1 (E.D. Mich. 2002)); *see also Washington v. City of Detroit*, No. 05-CV-72433, 2007 WL 788902, at *2 (E.D. Mich. Mar. 14, 2007) (explaining that a sur-reply "is not contemplated by Local Rule 7.1 under normal circumstances."). Parties must first seek leave to file a sur-reply. *Nett*, 2011 WL 1519166, at *3; *Fox v. Riverdeep, Inc.*, No. 07-13622, 2009 WL 1506670, at *1 n.1 (E.D. Mich. May 26, 2009). Respondents failed to seek leave to file their sur-reply. The Court will therefore strike the sur-reply and will not consider it.

Finally, shortly after the above sur-reply was filed, Petitioners filed a declaration by Miguel Angel Aparicio Navas. ECF 14. The Court construes Petitioners' declaration to be a reply to Respondents' sur-reply. ECF 13. For the same reasons as Respondents' sur-reply was stricken, the Court will also strike Petitioners' declaration and will not consider it in its determination of the TRO motion on its merits.

III.  Temporary Restraining Order

To succeed on their motion for a TRO, Petitioners must persuade the Court that, taken together, the four factors set forth above weigh in favor of granting the extraordinary remedy. *See, e.g., Blackwell*, 467 F.3d at 1109. The Court will address each factor in turn, taking into consideration the higher burden Petitioners bear due to the nature of their requested TRO. *See Hargett*, 348 F. Supp. 3d at 769.

   A.  *Likelihood of Success on the Merits*

Petitioners alleged that Respondents are subjecting them "to a substantial risk of serious harm, in violation of" their Fifth Amendment due process rights. ECF 1, PgID 41–42.[2] It is well established that "[t]he Fifth Amendment prohibits punishment of pretrial detainees," *Watkins v. City of Battle Creek*, 273 F.3d 682, 686 (6th Cir. 2001) (citation omitted), and "immigration detainees are entitled the same due process protections" as pretrial detainees, *E.D. v. Sharkey,* 928 F.3d 299, 306–07 (3d Cir. 2019) (collecting cases). Petitioners, as immigrant detainees, are therefore entitled to Fifth Amendment due process protections. Here, though, because Petitioners asserted "claims relating to health concerns," their claims are more properly analyzed under the Eighth Amendment standard of *Roberts* and *Estelle*. *See Al-Sadoon v. Adducci,* No. 20-10699, 2020 WL 1808906, at *3 (E.D. Mich. April 9, 2020) (citing *Watkins v. City of Battle Creek*, 273 F.3d 682, 685–86 (6th Cir. 2001)).

---

[2] Petitioner Chinchilla-Flores also alleged that Respondents violated 8 U.S.C. § 1231(a)(6) because his removal is not likely in the foreseeable future. ECF 1, PgID 42. Petitioners did not, however, discuss that claim in their emergency motion for a TRO. The Court will therefore analyze only the alleged Fifth Amendment violations when it resolves Petitioners' motion.

5

To succeed on an Eighth Amendment deliberate indifference claim, detainees must satisfy both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Petitioners may satisfy the objective component by showing that "absent reasonable precautions, [they are] exposed to a substantial risk of serious harm." *Richko v. Wayne Cty., Mich.,* 819 F.3d 907, 915 (6th Cir. 2016) (citation omitted). To satisfy the subjective component, Petitioners must show that the officials "being sued subjectively perceived facts from which to infer a subjective risk to the prisoner," that the officials "did in fact draw the inference," and "the official[s] then disregarded that risk." *Id.* (internal quotations and citation omitted).

First, Petitioners failed to show that they are objectively "exposed to a substantial risk of serious harm" *Id*. The Court is aware of the extent of the COVID-19 pandemic and the impact that it has had throughout Michigan and the United States. But detention centers throughout the country "are implementing health organizations['] recommendations for preventing the spread of the coronavirus." *United States v. Taylor*, No. 5:19-CR-192-KKC-MAS, 2020 WL 1501997, at *5 (E.D. Ky. Mar. 26, 2020). And Petitioners have not shown that the Monroe or St. Clair detention facilities are unable "to manage the outbreak or adequately treat [them] should it emerge at" their detention centers while they are still incarcerated. *Id.* (quoting *United States v. Gileno*, No. 3:19-cr-161-VAB-1, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020)).

The exhibits to the Petition included numerous general articles and press releases that discussed the spread of COVID-19, the policies certain jails and prisons

6

have implemented in response to COVID-19, and policies certain courts have implemented to release inmates, none of which the Court found particularly helpful when analyzing Petitioners' claims. *See generally* ECF 2-4. Petitioners also attached declarations by medical doctors that discussed the danger COVID-19 poses in jails and detention facilities and that ICE detention facilities are not prepared for COVID-19 and lack adequate procedures and equipment. *See, e.g.,* ECF 2-2, PgID 88 *see also* ECF 2-3, PgID 99–100 (arguing that ICE detention facilities lack adequate protocols, space, and cleaning materials to combat COVID-19). But neither of the doctors' declarations in Petitioners' motion specifically discussed the St. Clair or Monroe detention facilities. Petitioners' reply brief included a declaration from Dr. Homer Venters that contained minimal analysis about the St. Clair and Monroe detention facilities. *See* ECF 11-3. But he mainly discussed "ICE protocols and guidance" rather than facility-specific information. *See, e.g., id.* at 424. Dr. Venters's declaration is therefore unconvincing.

Finally, the Petitioners included declarations from Petitioners themselves that detailed the conditions in the Monroe and St. Clair detention facilities prior to April 6–7, 2020. Petitioners claimed that detainees in St. Clair are housed in large rooms with 15–20 other detainees, that detainees are "rotated in and out often," that "[m]eals are taken in a shared room," and that "[a]lthough bathrooms and sinks appear to be clean to the naked eye" detainees do not have hand sanitizers, masks, or gloves. ECF 2-5, PgID 201. They also claimed that detainees in Monroe are housed in 100 person dormitories, that their bunkbeds are only 3–4 feet apart, that they do

7

not have face masks, personal protective equipment, or hand sanitizer, that detainees clean the facility themselves, that they eat their meals "communally," and that no one in the facility practices social distancing. *See* ECF 2-6, PgID 205; ECF 2-7, PgID 209; ECF 2-8, PgID 212.

Respondents painted a different picture of the COVID-19 risk in these detention facilities. Although Respondents admitted that social distancing is difficult to maintain in detention facilities, they also attested that both the Monroe and St. Clair detention facilities have instituted policies to combat COVID-19 outbreaks. ECF 10-8, PgID 335–38; ECF 10-9, PgID 343–46. The new policies include screening detainees for COVID-19, isolating and testing individuals who have potential COVID-19 symptoms, ceasing all visitation, increasing the frequency of facility sanitation and cleaning, and providing detainees disinfectants and cleaning materials. *Id*. Further, both facilities have medical offices on site, and will transport ill detainees to medical facilities, if necessary. ECF 10-8, PgID 336; ECF 10-9, PgID 344–45. And Petitioners' own declarations stated that, as of April 6, 2020, guards had begun to wear masks and gloves. *See* ECF 2-6, PgID 205 (indicating that guards in Monroe "began wearing face masks and gloves" on April 6, 2020); ECF 2-5, PgID 201 (indicating that some guards in St. Clair are wearing masks and gloves). The battle against COVID-19 is ever evolving and changing. But it is clear that both facilities are implementing policies to prevent and decrease COVID-19's spread and to treat detainees if they become ill.

At this early stage, the Court is not convinced that Petitioners are or will be exposed to a substantial risk of harm because of their detention. And it will not make that sort of finding based on pure "speculation concerning possible future conditions." *United States v. Green*, No.19-85, 2020 WL 1493561, at *2 (W.D. Pa. Mar. 27, 2020). The Court therefore cannot find that Petitioners are likely to satisfy the objective standard of the Eighth Amendment analysis. That is not to say that the Court may come to a different conclusion during the analysis of Petitioners' § 2241 Petition. The COVID-19 pandemic is rapidly evolving, and additional evidence may change the Court's analysis. But the Court is unwilling to grant an extraordinary remedy and mandate a change of the entire status quo at two federal detention facilities based on the limited record it has before it.

Because Petitioners failed to satisfy the objective prong, the Court need not reach the subjective component. The first factor of the TRO analysis therefore weighs against Petitioners' request.

### B. Irreparable Injury

Next, the Court must consider whether Petitioners will suffer an irreparable injury. "To demonstrate irreparable injury, [Petitioners] must show that unless" they are immediately released "they will suffer actual and imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.* 443 F.3d 540, 552 (6th Cir. 2006) (internal quotations and citation omitted).

Petitioners failed to allege that harm is "certain and immediate" due to their detention. *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d

9

150, 154 (6th Cir. 1991). Every person in the United States, whether in a detention facility or not, faces COVID-19 exposure. *See United States v. Steward*, No. S1:20cr0052(DLC), 2020 WL 1468005, at *1 (S.D.N.Y. Mar. 26, 2020) ("there is also no reason to find that the defendant's release would lessen the risk to his health presented by COVID-19"); *see also Taylor*, 2020 WL 1501997, at *5 ("there is little reason to believe that [the detainee] would be more at risk if detained versus being released"). And all people living in Michigan, and especially the Metro Detroit area, face a high risk of COVID-19 exposure. Presently, Michigan has the third most COVID-19 cases and deaths in the nation, falling "behind New York and New Jersey, and ahead of California and Louisiana." *959 deaths, 20,346 cases of COVID-19 reported in Michigan*, WXYZ Detroit (Apr. 8, 2020, 2:53 pm) https://www.wxyz.com/news/coronavirus/959-deaths-20-346-cases-of-covid-19-reported-in-michigan. Petitioners are therefore susceptible to COVID-19 both inside and outside detention facilities.

Additionally, there is no concrete evidence that COVID-19 has breached the walls of the Monroe detention facility. ECF 10, PgID 262. And, although there are confirmed COVID-19 cases in St. Clair detention facility, there is no evidence that Respondents and facility officials are not doing everything possible to prevent the spread of COVID-19 and to keep detainees safe. *See generally* ECF 10-9. Both the Monroe and the St. Clair detention facilities have instituted policies specifically designed to combat COVID-19 and care for detainees. *See, e.g.,* ECF 10-8, PgID 335–38; ECF 10-9, PgID 343–46. Petitioners therefore failed to meet their burden to

10

demonstrate that they would face an immediate and irreparable injury absent the Court granting their motion. The second factor weighs against granting a TRO.

### C. *Substantial Harm to Others and Public Interest*

When the Government opposes a temporary restraining order, the remaining two factors—substantial harm to others and the public interest—merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Court will therefore analyze the two factors together.

First, "[p]rotecting public health and safety is clearly in the public interest." *State of Cal. v. Picayune Rancheria of Chukchansi Indians of Cal.*, No. 1:14-CV-01593 LJO SAB, 2015 WL 9304835, at *8 (E.D. Cal. Dec. 22, 2015). And COVID-19 presents a major threat to the public health and safety. As the Court discussed above, everyone in Michigan—and the United States—is susceptible to COVID-19. Petitioners alleged that they may become infected with COVID-19 while at a detention facility. But if they are released, they may become infected through contact with infected persons in their communities and then further spread the infection. Additionally, Petitioners' suggested method of supervision, if they are released, could potentially cause COVID-19 spread and exposure. Petitioners suggest home confinement with GPS monitoring as an alternative to detention. ECF 2, PgID 57–58. But Petitioners would have to travel to their homes and also come into contact with individuals setting up and monitoring the GPS system, increasing their chances, and the chances of the individuals supervising them, of being exposed to COVID-19. The public interest in

11

preserving public health and safety and the harm to others that may result from granting the TRO therefore weighs slightly in favor of denying Petitioners' motion.

Second, "[t]here is always a public interest in prompt execution of removal orders," *Nken v. Holder*, 556 U.S. 418, 436 (2009), and "the public interest in enforcement of the immigration laws is significant," *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d. 1211, 1221 (D.C. Cir. 1981) (collecting cases). Further, "[t]he continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings [the Illegal Immigration Reform and Immigrant Responsibility Act] established, and permits and prolongs a continuing violation of United States law." *Nken*, 556 U.S. at 436 (internal quotations, alterations, and citation omitted).

Petitioners did not contest that they violated the immigration laws of the United States or assert that they were wrongfully detained prior to the COVID-19 outbreak. Rather, their motion for a TRO is based only on alleged Fifth Amendment violations relating to the conditions of their confinement. *See* ECF 2, PgID 69. But Petitioners failed to show that they have a substantial likelihood of success on their Fifth Amendment claim. Because Petitioners failed to show that they have a substantial likelihood of success, the public interest in enforcing immigration laws weighs against Petitioners' requested TRO. These two factors therefore weigh slightly in favor of denying the TRO.

## CONCLUSION

Because the factors weigh against granting a TRO here, the Court will deny Petitioners' motion. The Court does, however, acknowledge the serious nature of this case. To keep a prompt progression of the case, it will order Respondents to respond to the Petition no later than April 17, 2020.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Petitioners' emergency motion for a temporary restraining order [2] is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioners' unopposed motion for leave to file excess pages [12] is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondents sur-reply [13] is **STRICKEN**.

**IT IS FURTHER ORDERED** that Petitioners' declaration by Miguel Angel Aparicio Navas [14] is **STRICKEN**.

**IT IS FURTHER ORDERED** that Respondents shall **RESPOND** to Petitioners' petition for a writ of habeas corpus [1] no later than **April 17, 2020**.

**IT IS FURTHER ORDERED** that Petitioners may **REPLY** to Respondents' response no later than **April 20, 2020**.

**SO ORDERED**.

                                                s/ Stephen J. Murphy, III
                                                STEPHEN J. MURPHY, III
                                                United States District Judge

Dated: April 14, 2020

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 14, 2020, by electronic and/or ordinary mail.

                                         s/ David P. Parker
                                         Case Manager